IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kofi Gyekye, :

    Plaintiff, :

  v. :    Case No. 2:11-cv-353

Lisa Gilliam, et al., :    JUDGE GREGORY L. FROST
                                           Magistrate Judge Kemp

    Defendants. :

## REPORT AND RECOMMENDATION

This matter is before the Court to consider the motion for summary judgment filed by defendants Lisa Gilliam, Shawn Vassar (identified in the complaint as John Doe Vessrah), Jondrea Parrish, Lisa Gilliam, Tyrone McConnell (identified in the complaint as John Doe, Unit Manager, Adams Unit) and Virginia Workman. For the following reasons, the Court will recommend that the motion for summary judgment be granted.

## I. Background

Plaintiff Kofi Gyekye, a state prisoner, filed his complaint against the defendants under 42 U.S.C. §1983 asserting that on August 31, 2010, while he was an inmate at the Madison Correctional Institution, he was verbally abused and subjected to an excessive use of force in violation of his Eighth Amendment rights. As discussed below, Mr. Gyekye has not filed a formal response to the motion for summary judgment. As a result, the following facts, construed in the light most favorable to Mr. Gyekye for purposes of defendants' motion, are taken from his complaint. According to Mr. Gyekye, while he was attempting to pick up his medication from the prison infirmary, Corrections Officer John Doe Fullrod (identified in defendants' summary judgment exhibits as Timothy Follrod) began calling him "houseboy." Mr. Gyekye states that when he objected to Officer Fullrod's comments, the officer "began using unnecessary force on

Petitioner and slammed him against the wall, continued the racial slurs, handcuffed the Petitioner and wrote a conduct report which resulted in Petitioner being placed in segregation." Additionally, Mr. Gyekye contends Officer Fullrod's actions were in retaliation for Mr. Gyekye's having filed two informal complaints against Officer Fullrod through the institutional grievance system.  Mr. Gyekye further states that "Petitioner has been removed from his job due to the actions of defendants.  C.O. John Doe Verssah also."

Mr. Gyekye's complaint also contains allegations relating to a separate incident involving Ms. Gilliam.  According to Mr. Gyekye, when he requested an extra footlocker for the storage of his legal materials, Ms. Gilliam swore at him and denied his request.  He also contends that she threw away his legal materials necessary for the appeal of the denial his habeas corpus petition  to the Sixth Circuit Court of Appeals.  Mr. Gyekye argues that Ms. Gilliam's conduct violated his First Amendment right of access to the courts.

The complaint contains no allegations directed to Ms. Parrish, Mr. McConnell, or Ms. Workman.  Further, although the primary basis for his Eighth Amendment claim relates to the conduct of Officer Follrod, Mr. Gyekye has not completed service on this alleged defendant.  Rather, according to the Court's docket, the summons issued to "John Doe Fullrod" was returned unexecuted on June 16, 2011.  Consequently, all claims against "John Doe Fullrod" will be dismissed without prejudice for failure to timely effect service.

## II. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c),

demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," <u>Celotex</u>, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

### III. <u>Analysis</u>

In the motion for summary judgment, defendants assert initially that Mr. Gyekye did not properly exhaust his administrative remedies with respect to some of the defendants and did not exhaust them at all with respect to others. With respect to the merits of Mr. Gyekye's claims, they argue that he

does not allege, nor can he demonstrate, the personal involvement of Ms. Workman, Mr. McConnell, or Ms. Parrish in any constitutional violation.  Further, with respect to Officer Vassar, defendants argue that Mr. Gyekye has failed to demonstrate that any force used on him was of sufficient malicious or sadistic purpose as to violate the Eighth Amendment.  Finally, with respect to Mr. Gyekye's claim against Ms. Gilliam, defendants contend that, as a matter of law, he cannot succeed on his access to the courts claim because he cannot demonstrate that he sustained any actual injury to his ability to pursue the appeal of his habeas case.

In support of their position, defendants have submitted several exhibits including a declaration from Linda Coval, Deputy Chief Inspector for Ohio Department of Rehabilitation and Correction and custodian of inmate appeals and grievances. Attached to Ms. Coval's declaration are copies of the informal complaints, formal grievances and appeals related to Mr. Gyekye's claims in this case.  With respect to Mr. Gyekye's Eighth Amendment claim, defendants have submitted a declaration from Mr. Vassar, copies of documents relating to the use of force report and review, and Mr. Gyekye's medical records relating to the alleged excessive use of force.  With respect to Mr. Gyekye's access to the courts claim, they have submitted a declaration from Ms. Gilliam and a copy of the ODRC regulations relating to inmates' adequate access to courts, attorneys, and legal research materials.

Mr. Gyekye has not filed a formal response to the motion for summary judgment.  Rather, in his opposition to the defendants' motion for leave to file their summary judgment motion instanter, Mr. Gyekye argues that he properly exhausted his administrative remedies.  On the other hand, he contends that to the extent he may not have properly exhausted, his failure to do so was a

result of his difficulties with the English language since having moved to the United States from Ghana. Further, he states, without any elaboration, that the defendants' own exhibits demonstrate that genuine issues of material fact relating to his claims exist.

In reply, defendants reiterate that Mr. Gyekye did not exhaust his administrative remedies. According to them, he did not file any grievances against Ms. Workman, Mr. McConnell, or Ms. Parrish. Further, they argue that with respect to Ms. Gilliam, Mr. Gyekye initiated the grievance process outside the mandatory 14-day deadline. As for Mr. Vassar, they contend that Mr. Gyekye failed to name him in his original grievance relating to the alleged events of August 31, 2010. Defendants assert that Mr. Gyekye's alleged difficulties with the English language, to the extent he has such difficulties, do not excuse his failure to comply with administrative exhaustion requirements. With respect to the merits of Mr. Gyekye's claims, defendants contend that he has provided no evidence in support and has provided nothing at all beyond broad statements that genuine issues of material fact exist.

Mr. Gyekye, without requesting leave of court, filed a response to the defendants' reply. In this filing, Mr. Gyekye appears to be arguing that he did not have to follow the grievance procedure with respect to Ms. Workman, Mr. McConnell, or Ms. Parrish because they were the individuals in charge of handling his grievances. He claims that there was "inappropriate Supervision" in violation of ODRC policy and again asserts that defendants, and more specifically Ms. Workman, threatened him with harassment and then in fact retaliated against him for his use of the grievance process. He has submitted a copy of the first page of a letter dated September 28, 2010, which he received from the Correctional Institution Committee and which he

contends indicates that he did follow the grievance procedure properly.

The defendants have filed a motion to strike Mr. Gyekye's response to their reply. The defendants contend that Mr. Gyekye's filing must be stricken because he did not seek leave of court and he has not demonstrated good cause for its filing. Further, they contend that the filing does not respond to their reply but for the first time raises allegations of retaliation specifically against Ms. Workman.

### A. Exhaustion

Turning first to the exhaustion issue, defendants contend that they are entitled to summary judgment because Mr. Gyekye failed to exhaust his administrative remedies as required by 42 U.S.C. §1997e(a). Mr. Gyekye contends that he has properly exhausted or, alternatively, that his failure to exhaust should be excused.

Generally speaking, "[t]he requirement to exhaust administrative remedies in mandatory and 'applies to all prisoners seeking redress for prison circumstances or occurrences.'" Carr v. Lavender, 2011 WL 5834967, *1 (S.D. Ohio November 21, 2011)(Frost, J.) quoting Porter v. Nussle, 534 U.S. 516, 520 (2002). However, §1997(e) allows a court to dismiss a claim on the merits despite a prisoner's failure to exhaust his administrative remedies. 42 U.S.C. §1997e(c)(2). As explained by the court in Bowen v. Cady, 2010 WL 148843 at *3 fn. 2 (E.D. Mich. Jan. 13, 2010),

> Although this provision directly addresses a claim for relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage. This provision is akin to the habeas corpus rule which permits a court to dismiss unexhausted claims on the merits. Much like the habeas exhaustion requirement, the PLRA exhaustion requirement is designed to promote administrative and judicial efficiency, and to show

respect for the states by allowing the states the first opportunity to correct constitutional errors. See, e.g., Brown v. Toombs, 139 F.3d 1102, 1103-04 (6th Cir.1998) (per curiam); Sanders v. Elyea, No. 96 C 4559, 1998 WL 67615, at *5 (N.D.Ill. Feb.10, 1998). And, as the habeas courts have noted, exhaustion of meritless constitutional claims does not promote these interests. See Granberry v. Greer, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); Prather v. Rees, 822 F.2d 1418, 1422 (6th Cir.1987). Section § 1997e(c)(2) recognizes this fact, and is equally applicable notwithstanding the fact that this case is now before the Court on a motion for summary judgment. Accordingly, because as discussed below plaintiff's claims are without merit, the Court should grant summary judgment on the merits rather than require further exhaustion. Cf. Bastek v. Federal Crop Ins. Corp., 975 F.Supp. 534, 536 (S.D.N.Y.1997) ("However, when one of the purposes is not furthered, exhaustion is normally not required."), aff'd, 145 F.2d 90 (2d Cir.1998), petition for cert. filed, No. 98-320 (Aug. 20, 1998); Unger v. U.S. West, Inc., 889 F.Supp. 419, 424 (D.Colo.1995) ("If these purposes would not be furthered, then administrative exhaustion is fruitless."); Coles Express v. New England Teamsters & Trucking Indus. Pension Fund, 702 F.Supp. 355, 361 (D.Me.1988) ("Exhaustion of administrative remedies is not compelled where the policies it was intended to further are not implicated, as where there is no need for the superior expertise of an administrative body, where judicial economy would not be promoted and where the statutory scheme created by Congress would not be ignored.").

Similarly, other courts have found that the issue of exhaustion is not required to be considered when the claims clearly fail on their merits. Thomas v. Brockbank, 195 Fed.Appx. 804 (10th Cir. 2006); Carr v. Tousley, 2009 WL 1514661, *16 (D. Idaho May 27, 2009) ("the court is not aware of any authority binding on this court which straightjackets the court into deciding the exhaustion question before the merits of the summary judgment motions"). See also Woodford v. Ngo, 548 U.S. 81, 101 (2006)(the PLRA exhaustion requirement is not jurisdictional and

-7-

district courts "may dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies."). Because, as set forth below, Mr. Gyekye's claims fail on their merits, the Court will not address the issue of exhaustion.

          B.  <u>Defendants Workman, McConnell, and Parrish</u>

Defendants have moved for summary judgment in favor of Ms. Workman, Mr. McConnell, and Ms. Parrish on grounds that while Mr. Gyekye has named them as defendants, in the body of his complaint he does not allege any specific conduct taken by them. A review of the complaint indicates that defendants are correct in their assertion. Further, the only mention of any conduct by these defendants is in Mr. Gyekye's response to the reply which defendants have moved to strike. This response states in relevant part,

> Defendant Parrish is or was the Institutional Inspector who Plaintiff filed his Grievance with, and Defendant McConnell was his Unit Manager inwhich Plaintiff was require to file his Informal with and as for Defendant Workman, she was the person who was over Plaintiff's Unit Manager and was the person who made Threats of retaliation if he continue to exercise his right to use the Inmate Grievance Procedure and is the very person that Plaintiff reported her threat to the Warden himself. and that would have been Warden Johnson of Madison Correctional, and in turn Warden Johnson OK Plaintiff's transfer to London Correctional because of the Threats made by Defendant Workman."

This statement, however, does not shed any significant light on any claims against Ms. Parrish or Mr. McConnell. Rather, Mr. Gyekye appears to be suggesting that he was not required to pursue any grievance against these individuals before filing his complaint because these were the individuals with whom he was required to file his grievances. He states in passing that they "had the opportunity to correct the problem but chose not to do

-8-

so," but this is insufficient to support any claim under §1983. It is well-established that §1983 liability may not be imposed against these defendants because "there is no inherent constitutional right to an effective prison grievance procedure." Keenan v. Marker, 23 Fed.Appx. 405, 407 (6th Cir. 2001) citing Hewitt v. Helms, 459 U.S. 460, 467 (1983).

Further, the Court notes that Mr. Gyekye also makes passing reference to inappropriate supervision in violation of ODRC policy 5120-9-04. To the extent that Mr. Gyekye may be suggesting that Ms. Parrish or Mr. McConnell have some liability arising from their supervisory capacity, any such claim cannot succeed. Section 1983 liability cannot be imposed under a theory of respondeat superior. Rather, proof of personal involvement is required for a supervisor to incur personal liability. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Taylor v. Michigan Dept. of Corrections, 69 F.3d 76, 80-81 (6th Cir. 1995). "At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). For these reasons, the Court will recommend that the motion for summary judgment be granted as to Ms. Parrish and Mr. McConnell.

With respect to Ms. Workman, in his response Mr. Gyekye appears to be clarifying that he is asserting a First Amendment retaliation claim against her for the exercise of his right to use the inmate grievance procedure - as a result of both alleged threats she made and his transfer to another institution. For the reasons more fully set forth below, the Court will recommend that the defendants' motion for summary judgment be granted as to Ms. Workman. Accordingly, the Court will recommend that defendants' motion to strike be denied as moot.

## C. Eighth Amendment

Mr. Gyekye's Eighth Amendment claim of excessive use of force appears to be directed only to the actions of Officers Vassar and Follrod. The standard used to analyze excessive force claims under the Eighth Amendment requires the Court to determine whether the officers acted in a good faith effort to maintain or restore discipline, or whether they acted maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 8 (1992); see also Wilkins v. Gaddy, --- U.S. ----, ----, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010). That is not to suggest that every angry touch by a prison guard gives rise to a federal cause of action. Prison officials may often be required to use physical contact to insure prison security. Id. at 9. The physical contact will rise to the level of an Eighth Amendment violation only if the contact represents an "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In determining whether the use of force was wanton and unnecessary, the extent of injury suffered by an inmate is one factor that may be considered, along with other factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). Generally, if the force applied is grossly disproportionate to the offense committed by the prisoner, a plaintiff states a cause of action for use of excessive force. Rhodes v. Chapman, 452 U.S. 337, 345 (1981).

Here, there is no dispute that force was used against Mr. Gyekye. In their motion for summary judgment, the defendants argue that this force was not excessive under an Eighth Amendment analysis because it was applied in "a good-faith effort to

maintain or restore discipline" and Mr. Gyekye has not provided any evidence to the contrary.  Further, the defendants contend that, under the standard established by the Supreme Court in <u>Wilkins v. Gaddy</u>, <u>supra</u>, although Mr. Gyekye does not have to demonstrate a severe injury, he does have to demonstrate some injury in order to succeed with his §1983 claim.  They frame this argument in terms of standing and argue that, because Mr. Gyekye's medical records do not demonstrate any injury arising from the use of force incident, he is without standing to pursue a §1983 claim.

As noted above, Mr. Gyekye did not respond to defendants' arguments on the excessive use of force claim.  However, the Court may not grant the defendants' motion solely on this ground. <u>Miller v. Shore Financial Services, Inc.</u>, 141 Fed. Appx. 417, 419 (6th Cir. 2005); <u>Stough v. Mayville Cmty. Sch.</u>, 138 F.3d 612, 614 (6th Cir. 1998); <u>Carver v. Bunch</u>, 946 F.2d 451 (6th Cir. 1991). Rather, the defendants bear the burden of demonstrating the absence of a genuine issue of material fact.  The defendants have met that burden here.

In support of their position, defendants have submitted the declaration of Shawn Vassar, the use of force committee reports including Mr. Gyekye's statement of the incident, an incident report from a nurse present in the infirmary at the time of the incident, and Mr. Gyekye's use of force medical exam report. According to Officer Vassar's declaration, when he entered the infirmary, he heard Officer Follrod and Mr. Gyekye shouting at each other.  Officer Follrod was directing Mr. Gyekye to leave and Mr. Gyekye was refusing and appeared to be prepared to offer physical resistance.  Mr. Vassar witnessed Officer Follrod grab Mr. Gyekye, spin him around, grab him by his shirt and jacket, and place him against the wall to handcuff him.  Mr. Vassar assisted in placing Mr. Gyekye in handcuffs and escorted him to

segregation.  According to Mr. Vassar, this use of force was routine under the circumstances of a prisoner demonstrating resistance and the amount of force used was minimal.

Defendants' additional documentation relating to this issue is consistent with Officer Vassar's description of the events. The incident report completed by the nurse states that Mr. Gyekye was resisting the officers.  Further, Mr. Gyekye's own statement of the incident indicates that he did not leave the infirmary as instructed by Officer Follrod.  Additionally, the medical exam report completed immediately following the use of force states that Mr. Gyekye had no marks or signs of trauma and did not require medical treatment.

Moreover, the allegations of the complaint support the defendants' version of the events.  In his complaint, Mr. Gyekye admits that he "voiced his opinion and disapproval" to Officer Follrod.  Further, although he makes a conclusory statement that Officer Follrod "slammed him against the wall," Mr. Gyekye provides no detail.  As noted above the medical reports do not suggest any injuries consistent with being "slammed" against a wall and Mr. Gyekye does not provide any evidence of, or even allege, any resulting injury.  For all of these reasons, the Court will recommend that the defendants' motion for summary judgment be granted on this issue.

The Court notes that Mr. Gyekye also may be suggesting in his complaint that the alleged use of racial slurs in connection with the use of force incident violated his Eighth Amendment rights.  To the extent that the complaint may be read in this way, the Court will recommend summary judgment on this issue as well.  The use of racial slurs, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude."  Jones Bey v. Johnson, 248 Fed.Appx. 675, 677 (6th Cir. 2007) quoting Corsetti v. Tessmer, 41 Fed.Appx. 753, 755-56

-12-

(6th Cir. 2002).

### D. First Amendment claims

Defendants argue that they are entitled to summary judgment on Mr. Gyekye's First Amendment access to the courts claim against Ms. Gilliam because Mr. Gyeke has not demonstrated that her actions impacted his ability to pursue an appeal of the denial of his habeas claim. As with his Eighth Amendment claim, Mr. Gyekye has not responded to this argument. As required, however, the Court will consider whether the defendants have met their burden of demonstrating the absence of a genuine issue of material fact relating to this claim.

There is no doubt that prisoners have a fundamental right of access to the courts under the First Amendment. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996). To succeed on a claim for denial of access to the courts, Mr. Gyekye must demonstrate he suffered actual injury as a result of Ms. Gilliam's actions. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous criminal defense, direct appeal, habeas corpus application, or civil rights action. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir.1999). Impairment of any other litigation activity is not a violation of the right to access the courts. Id. at 355.

Mr. Gyekye has provided no evidence that he was unable to pursue the appeal of the denial of his habeas claim as a result of Ms. Gilliam's actions. Nor, according to the Court's docket in his habeas case, could he. Mr. Gyekye's habeas claim was

dismissed by this Court on September 8, 2010.  See Order Adopting Report and Recommendation (#21), Gyekye v. Warden Lebanon Correctional Institution, Case No. 1:09-cv-753 (Dlott, J.). Under Federal Rule of Appellate Procedure 4(a)(1), Mr. Gyekye's notice of appeal was due within 30 days.  Under Appellate Rule 4(a)(5), a district court may, in its discretion, extend the time for filing a notice of appeal if the appellant moves no later than thirty days after the expiration of the time prescribed by Rule 4(a) and the party shows either excusable neglect or good cause.  Fed.R.App.P. 4(a)(5)(A).  Here, Mr. Gyekye contends that he was unable to pursue his appeal because of Ms. Gilliam's alleged destruction of his legal materials on November 5 or November 8, 2010.  However, the alleged destruction of his legal materials after the conclusion of the 30-day time period for filing an appeal certainly cannot establish excusable neglect or good cause for failing to file an appeal within the required time-frame.  At the same time, assuming that the destruction of his legal materials after the expiration of the 30-day period could constitute grounds for an extension under Appellate Rule 4, Mr. Gyekye has provided no evidence that he sought to file such a request at any point between November 5 and November 8, 2010.  A motion for an extension of time filed between these dates easily would have fallen within the 30-day time frame under the terms of the prisoner mailbox rule set forth in Rule 3(d) of the Rules Governing Section 2254 Cases.  Under these circumstances, Mr. Gyekye has failed to demonstrate that he was prevented from pursuing an appeal in his habeas case as a result of Ms. Gilliam's actions.  Consequently, the Court will recommend that the motion for summary judgment be granted as to this claim.

Mr. Gyekye also alleges in his complaint, without much detail, that "defendants" retaliated against him for filing grievances and complaints.  It is unclear which defendants this

claim is directed to although there is some indication that it is directed to Officer Follrod who has not been served with a copy of the complaint.  However, as discussed above, Mr. Gyekye stated in his response that Ms. Workman engaged in retaliatory behavior as a result of his use of the grievance process.  To the extent that Mr. Gyekye is directing this claim to defendants in addition to Officer Follrod, including Ms. Workman, the Sixth Circuit has held that an inmate has a First Amendment right to file an institutional grievance against prison officials on his own behalf.  Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000); Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996).  To state a First Amendment retaliation claim, a prisoner must establish that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) the adverse action was motivated, at least in part, by the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).  Even the threat of an adverse action might satisfy this test if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct.  See Pasley v. Conerly, 345 Fed. Appx. 981, 985-986 (6th Cir.2009).  However, the First Amendment right to file grievances is protected under the first prong of Thaddeus-X only if the grievances are not frivolous. Herron, at 415.

At most, Mr. Gyekye has asserted that he filed grievances and complaints.  He has provided little to no specificity regarding the nature of the grievances he filed.  On one hand, he appears to be arguing that the use of force incident was in retaliation for grievances he filed prior to that incident.  On the other hand, he seems to indicate at least, in attempting to clarify his claims against Ms. Workman, Ms. Parrish, and Mr. McConnell, that other grievances may be at issue.   Because other

grounds exist for dismissal of this claim, however, the Court will assume that the grievances at issue were non-frivolous and that Mr. Gyekye has met the first prong of the Thaddeus-X test. See Walker v. Michigan Dept. of Corrections, 128 Fed.Appx. 441 (6th Cir. 2005).

Regardless, he has not shown that any adverse action was taken that would deter a person of ordinary firmness from engaging in further grievance filing. Similarly, he has not shown that any of the defendants' conduct was motivated by his grievance filings. He only states that he "is of the belief and contends that [defendants'] conduct was done in retaliation for exercising his protected right to engage in First Amendment access to court protected conduct of filing informal complaints against staff members." However, conclusory allegations of retaliatory motive "unsupported by material facts will not be sufficient to state ... a claim under §1983." Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987); Harbin-Rey v. Rutter, 420 F.3d 571 (6th Cir. 2005). That is, the "'relevant showing ... must be more than the prisoner's personal belief that he is the victim of retaliation.'" Smith v. Yarrow, 78 Fed.Appx. 529, 540 (6th Cir. 2003) quoting Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Moreover, as noted above, Mr. Gyekye asserts that he challenged Officer Follrod before any force was used to handcuff him, thereby undermining his claim that any use of force applied by Officer Vassar or Officer Follrod was designed as retaliation for filing grievances. Moreover, any use of force clearly did not deter Mr. Gyekye from exercising his right to file another grievance because he filed grievances after the use of force incident including grievances relating to the use of force incident.

Similarly, Mr. Gyekye has provided no evidence that he was prevented from filing grievances as a result of Ms. Workman's

actions or threats of retaliation.  Mr. Gyekye suggests in his response that Ms. Workman had him transferred to another institution in retaliation for his use of the inmate grievance procedure.  However, he does not relate this transfer to any particular grievance.  Further, he does not provide any evidence of temporal proximity sufficient to show a retaliatory motive. See Skinner v. Bolden, 89 Fed.Appx. 579, 579-580 (6th Cir. 2004). Moreover, the Sixth Circuit has "repeatedly held that transfer from one prison to another prison 'cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.'" Smith v. Yarrow, 78 Fed.Appx. 529 (6th Cir. 2003) quoting Mandela v. Campbell, 181 F.3d 102 (Table), 1999 WL 357825, at *3 (6th Cir. May 26, 1999).  While the Sixth Circuit has distinguished Smith and recognized that the transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoners' ability to access the courts, see Hix v. Tennesse Dept. of Corrections, 196 Fed.Appx. 350 (6th Cir. 2006), Mr. Gyekye has presented no such evidence here.  Consequently, the Court will recommend that defendants' motion for summary judgment be granted on this claim.

    Further, the Court notes that Mr. Gyekye asserts in his complaint that he was removed from his job "due to the actions of defendants."  To the extent that Mr. Gyekye is attempting to raise any constitutional issue regarding the loss of his job, he cannot succeed.  An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause.  Jewell v. Leroux, 20 Fed.Appx. 375, 377 (6th Cir. 2001).  Consequently, the Court will recommend that summary judgment be granted on this issue.

## IV. Recommended Disposition

For the reasons set forth above, it is recommended that the motion for summary judgment (#30) be granted and that this case be dismissed with prejudice as to all claims against defendants Gilliam, Vassar, Parrish, McConnell, and Workman. It is further recommended that plaintiff's claims against defendant "John Doe Fullrod" be dismissed without prejudice for failure to timely effect service. Finally, it is recommended that the motion to strike (#33) be denied as moot.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge